**STOKER COAL CO., Inc., et al. v. PUBLIC SERVICE COMMISSION.**

Court of Appeals of Kentucky.
Jan. 25, 1952.

Charles Wylie, Lexington, for appellants.

J. Gardner Ashcraft, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Appellants, Stoker Coal Company and Marlowe Coal Company, Kentucky corporations that have the same officers and stockholders, were organized for the purpose of operating two coal mines in Perry County. The mines are situated approximately 1½ miles apart, and each corporation is the lessee of a mine. Both mines are served with electric power by appellee, Kentucky and West Virginia Power Company, hereinafter called the Power Company. Connection with the Power Company's line is through a single meter located on the property of the Stoker Company and electricity is transmitted therefrom by appellants' line to the Marlowe Company. We shall sometimes refer to each appellant simply as a corporation.

On June 17, 1945, the Power Company began to serve both corporations through one meter. All bills for electricity were forwarded to the Stoker Company and each corporation paid one-half of the cost for this service. On June 12, 1948, the Power Company notified appellants that it would be necessary to discontinue its combined metering for both mines and that it could thereafter furnish electric power only through a separate meter at each mine. On June 18, 1948, appellants filed their complaint before the Public Service Commission, averring that the Power Company was refusing to provide electric current to appellants through one meter under the circumstances as outlined and requesting that the Power Company be ordered to continue service in the same manner as it had been performed in the past.

Subsequently, after a full hearing, the Commission entered an order wherein it adjudged that appellants were separate and distinct customers of the Power Company and that the Power Company was guilty of violating the Commission's Rule No. 21 when it permitted each of appellants' mines to be served through one meter. The Commission accordingly directed the Power Company to install separate meters at each of the mines. Appellants filed their petition for review in the Franklin Circuit Court seeking to vacate the order of the Commission. A demurrer was sustained to their petition, which was dismissed after they declined to plead further. They appeal.

To reverse the judgment, it is contended, first, that the two appellants, although they are separate and distinct corporations, are in fact one customer of the Power Company; and, second, that appellants have shown good cause to be permitted to have current furnished to them through one meter, even though they are not one customer.

The Commission's action was pursuant to Rule No. 21 of its Regulations for the Government of Electric, Gas and Water Utilities, which became effective April 1, 1935, and which reads, so far as applicable here, as follows: "Watt hour meters shall be placed in service for measuring the electrical energy used by each and every customer including the utility itself. * * * The utility shall regard each point of delivery as an independent customer and meter the power delivered thereat. The practice of combining meter readings taken at separate points, or of measuring the energy used by more than one residence or place of business on one meter for the purpose of obtaining a lower rate, is absolutely prohibited, unless upon application to the Commission such authority is granted for good cause shown."

The record discloses that the Marlowe Company was incorporated in 1932 and the Stoker Company in 1948. The latter had previously existed as a partnership. It was definitely shown at the hearing before the Commission that each corporation has always conducted its business of every nature separately from the other. As has been said, both corporations have always paid their respective share of each electric bill. Therefore, if the corporations operate independently for all other purposes, how can we logically conclude that both should be considered as one customer in order to evade the requirements of Rule 21? This regulation provides that not only must each customer have an individual meter but that the practice "of combining meter readings taken at separate points" or "of measuring the energy used by more than one place of business on one meter" is positively forbid-

·den. The violation of Rule 21 by appellants is so obvious that there is no need to elaborate further on this point.

To justify their act and in order to continue to receive the same service through one meter, appellants argue that they have expended $10,000 to construct facilities for the transmission of electric power into one of their mines and that their present setup will be worthless, if meters must be installed at each mine as required by the Commission. Actually, according to the proof at the hearing, the two corporations were able to effect a combined saving of $11,940.85 during the first eleven months they operated by reason of the fact that they were permitted to receive electricity through only one meter. So, it cannot be maintained that appellants have suffered a financial loss under the circumstances. Moreover, it is self-evident that their reason in resorting to combined metering at their two mines was to obtain an over-all lower rate. This is the real vice that Rule 21 seeks to prevent, because the practice resorted to by appellants in the case at bar, if allowed to spread, would tend to destroy rate standards.

Wherefore, the judgment is affirmed.